# Commonwealth v. Henckel

*Samuel J. Feigus* and *Joseph W. Ray, Jr.*, for Commonwealth.

*Chad L. John* and *Chad A. John*, for defendant.

DUMBAULD, P. J., February 11, 1941.—We are called upon to decide in this appeal from a summary conviction a question of much interest and considerable importance to the landowners and sport lovers of the Commonwealth.

The question may be briefly stated:

May the owner or lessee of a tract of land in this Commonwealth hunt thereon during the legal hunting season, without procuring the license provided for in article III, sec. 317, of The Game Law of June 3, 1937, P. L. 1225?

Defendant insists that he may. The Commonwealth asserts that he may not.

The question must be answered by interpretation of the above-named section of the above-named act. It reads as follows:

"Nothing in this article shall be construed to prevent any citizen of the United States, residing within this Commonwealth, from having a gun in his home; or from using such gun in defense of either person or property, or from shooting at targets; or to prevent any bona fide owner or any bona fide lessee of lands within this Commonwealth,

or any member of the family or household or regularly hired help of such owner or lessee, if such person is a citizen of the United States, actually residing upon and cultivating such lands, from hunting or trapping thereon; or, by and with the consent of the owner thereof, from hunting or trapping upon the lands immediately adjacent and connected with his own lands, without securing the license provided for by this article . . ."

The learned counsel for the Commonwealth say in their brief:

"A careful reading of this section necessarily leads to the conclusion that the words used are entirely clear and without ambiguity. They clearly mean that the defendant to be excused from the requirements of the act must actually reside upon and cultivate the land upon which he hunts. It is admitted that he did not reside upon the tract of land on which he was hunting, but that his residence was actually a distance of five miles away. Therefore, the appeal should be dismissed."

Is the question really so simple as that?

We think not. It is admitted that defendant was hunting upon his own tract of over 1,000 acres of mountain land. A comparatively small part of this tract is under cultivation. On it are erected a dwelling house, barns, and other outbuildings. The work in cultivation is done by defendant, his sons, and a hired man, who resides in one of the houses located on the premises. The sons occupy portions of the dwelling house, while at work on the cultivated portions. Defendant lives some five miles from this tract, on a farm. These tracts are separated by lands of other owners and are approximately five miles from each other.

Defendant admits that he hunted without license, asserting that he thought his ownership of the land was sufficient to entitle him to hunt thereon without procuring a license under the terms of the act.

These facts admitted by the parties, and so found, necessarily project the question:

Did the legislature intend to make the right to hunt without license dependent, in a landowner's case, upon his combining the three requisites, namely, ownership, residence, and cultivation? Did it intend that, in a case such as this, the hired man can hunt without a license, while the owner, because of failure to actually reside thereon and actually join in the act of cultivation, is denied the exemption? Did the legislature intend to indiscriminately join in one group, as a specially privileged class, owners, lessees, members of the owners or lessees' household or family and the regularly hired help, all on the basis of actual residence on the premises and joinder in the cultivation, or did the legislature intend to classify bona fide owners and bona fide lessees in one class, with the privilege of hunting without license on the land within their dominion as a special attribute of such ownership and control, no matter where they might reside, or what their occupation might be; and to classify in a different group those that can be eligible to hunt without license only by the fact of actual residence upon and cultivation of the land in question?

The language used is susceptible of either construction. The meaning of the words "such person" and a decision as to the class to whom it refers determines the meaning of the section.

If we define "such person" as referring back through the recurrence of the conjunction "or", out of the clause in which it occurs, to the persons described as "owner" and "lessee" in the preceding clause, then the Commonwealth's contention is sustained, and the owner of the land who does not actually reside upon and cultivate his lands is denied the exemption that is accorded to his household, his family, and his hired help.

If we define "such person" as referring only to the class named after the word "or" and immediately preceding the words "such person", and that only members of the owners or lessees' household or family and the hired help have to qualify themselves by the incident of resi-

dence and cultivation, then defendant's contention prevails.

Without straining the rules of English, we may well read the section thus:

"Nothing in this article shall be construed to prevent . . . any bona fide owner or any bona fide lessee of lands within this Commonwealth. . . from hunting or trapping thereon . . . without securing the license provided for by this article. . . . Or to prevent any member of the family or household or regularly hired help of such owner or lessee, if such person is a citizen of the United States, actually residing upon and cultivating such lands, from hunting or trapping thereon . . . without securing the license provided for by this article. . . ."

We accept the contention of defendant and so decide.

The punctuation and grammatical construction lend themselves to this interpretation. The owner and lessee are mentioned in a clause set off by a comma. This is followed by the conjunction "or", and the mention, in a separate clause, of what we regard as the second class in the enumeration, namely, "any member of the family or household or regularly hired help of such owner or lessee, if such person is a citizen of the United States, actually residing upon and cultivating such lands . . .", indicates a limitation of the meaning of "such person" to the parties described in the clause in which the words are found.

If, instead of "such person", the legislature had used the pronoun "he", we would surely regard "member of the family or household or regularly hired help" as the antecedent of the pronoun "he".

If the legislature intended to provide that the owner or lessee of land must not only own, but also reside upon and cultivate his land, in order to secure exemption, and that he is to be classified indiscriminately, as to such exemption, with members of his family, household, and hired help, then it would be much simpler and entirely sufficient to say, ". . . or to prevent any citizen of the United States actually residing upon and cultivating any lands

in this Commonwealth from hunting thereon without procuring the license provided by this article."

The involved phraseology was altogether unnecessary if the intent was to make the fact of residence and cultivation the sine qua non for exemption from securing license.

We see in the language of the article an intention to place owners and lessees, when bona fide, in a separate class and bestow upon them the special privilege of hunting upon the soil within their dominion, without the necessity of procuring a license. The man who pays for land, who provides for someone to reside upon it and cultivate it, pays the annual taxes assessed thereon and generally exercises dominion over a certain portion of the landed area of the Commonwealth, has a right to presume that the legislature intended to separate him from his fellow-citizens as to the matter of procuring an additional right to pursue the festive rabbit or shoot at the elusive quail, in the form of a license to hunt on the land which his industry has placed within his control.

To ascribe to our lawmakers the purpose of permitting my hired help or my growing son or my Diana-minded daughter and my regularly employed help, all residing upon my land and cultivating it, while I reside in the city and earn enough money to keep up the taxes, pay for the broken plows, provide the buckwheat seed, and establish and maintain the game preserves, to exercise special privileges on my lands that I may not myself enjoy without special license, is, to say the least, showing slight appreciation of the much-heralded notion that private ownership of land in a capitalistic economy should always be encouraged, extended, and regarded as a special virtue.

We think the owner of lands should, as an incident of such ownership, be permitted to hunt thereon, without license, and we think that the legislature has so decreed.

The only hint at judicial interpretation of this section which has come to our notice is the statement by Fox, J., in Dietz et al. v. Commonwealth ex rel., 31 D. & C. 437 (p. 444):

"Section 317 of The Game Law provides that farmers may hunt on their own lands without securing the license provided for by this article."

This language may be used to support either contention and is therefore not particularly helpful. It does seem to indicate that in the thought of Judge Fox "farmers" are exempt from the requirement of procuring a license to hunt on their own farm lands.

In accordance with this opinion, we make the following

### Order

Now, February 11, 1941, upon consideration of the testimony, admitted facts, and the law applicable to this case, we find defendant, E. R. Henckel, not guilty of the offense charged, and it is ordered and directed that his appeal be and the same hereby is sustained, and that defendant be and he hereby is discharged without day, record costs in this case to be paid by the County of Fayette.